## Newlin v. Grove City School District

*Shelley W. Elovitz,* for plaintiff.
*McBride and McNickle,* for defendant.

STRANAHAN, P.J., December 23, 1976 — This is an appeal under the Local Agency Law of December 2, 1968, P.L. 1133, 53 P.S. §11307, from a decision of the board of school directors of The Grove City Area School District suspending Jean Newlin as dental hygienist under the Public School Code of 1949, Act of March 10, 1949, P.L. 30, art. I, sec. 101, 24 P.S. §1-101 et seq.

In January 1972, the Grove City Area School District instituted a program of dental hygiene services for its students under the authority of said School Code of March 10, 1957, P.L. 30, as amended, 24 P.S. §14-1403(b).

On June 11, 1974; a Professional Employee Contract was executed between the School District and Jean Newlin. Mrs. Newlin was hired as a dental hygienist and as such had the status of a professional employee: 24 P.S. §11-1101. She was the only dental hygienist employed by the district.

Mrs. Newlin presented a professional certificate indicating her qualification to perform the function of dental hygienist. She is not qualified to teach any other subject or perform any other function.

On June 14, 1976, at a regular meeting of the school directors a motion was made and carried suspending the dental hygienist program. The reason for the suspension of the program was "the financial condition of the school district." This was done on the recommendation of the superintendent.

On June 24, 1976, the Department of Education was informed of the suspension of the program and on July 14, 1976, this letter was acknowledged by said department and the school district was directed to comply with the mandated program of 24 P.S. §14-1403(a)

On June 29, 1976 Jean Newlin was notified of her suspension because the program itself had been suspended "to alleviate some of the financial difficulties encountered in the 1976-77 school budget."

A substitute dental program has been adopted for the 1976-77 school year under section 14-1403(a). A school dentist has been hired to perform the examinations as required by the Code.

A hearing was held September 9, 1976, concerning the suspension of Mrs. Newlin. At this hearing a transcript of the testimony was taken and findings of fact, conclusions of law, and a decision were filed. The decision was to suspend the dental hygienist program and to suspend Mrs. Jean Newlin.

From all of this, Mrs. Newlin took an appeal alleging error in the findings of fact, conclusions of law, and decision of the board.

We agree with Mrs. Newlin that the testimony does not support the finding of fact or the decision of the board that the suspension resulted from a decrease in enrollment but, instead, the evidence is clear that the suspension of Mrs. Newlin was the

result of the discontinuance of the dental hygiene program. To hold otherwise is to disregard the plain language of the resolution suspending Mrs. Newlin.[1] Admittedly the financial condition of the school district may be attributable to a decline in enrollment among other matters.[2] All of this caused the discontinuance of the program which led to the suspension.

We, therefore, must reverse the board on its decision and *we find that Mrs. Newlin was suspended because the dental hygienist program was discontinued.* Why the hygienist program was discontinued was because of the financial condition of the school district which may have resulted from a decline in enrollment or for other reasons.

I. CAN THE SCHOOL DISTRICT SUSPEND A DENTAL HYGIENIST PROGRAM BECAUSE OF FINANCIAL CONDITIONS?

The answer to this question seems obvious. In section 14-1403(b) it provides: "Any school district or joint school board *may* institute a program of dental hygiene services. . . ." (Emphasis supplied) Thus from the language of the statute it is apparent that the program is optional. Comparing this to section 14-1403(a) which is a mandatory section dealing with dental examinations, it is clear that (a) is the minimum mandated program required by the Code and (b) is a more extensive program that is optional and, therefore, non-mandatory. Further

---

1. The cost of Mrs. Newlin's employment was $16,200 a year, whereas the dentist would be paid $1. per pupil or $602. per year.

2. Dr. Wolfe, superintendent, testified as follows: (Tr. page 24) ". . . the declining enrollment was a factor that brought about the impaired financial condition . . ."

evidence of this appears in section 14-1411 which permits the district to cooperate with any county, city, borough, town or township engaged in health work. There is no language in any of the statutes that either makes the dental hygienist program mandatory nor is there any language which would prevent discontinuance of the program once it had been adopted.

The case law is consistent with the distinction between mandated and non-mandated positions. In Charleroi Area School Dist. v. Secretary of Education, 18 Pa. Commonwealth Ct. 121, 125, 334 A. 2d 785 (1975), the court states: "The law is clear that if proper procedures are followed, positions occupied by professional employees may be abolished." Smith v. Darby School District, 388 Pa. 301, 130 A. 2d 661 (1957), is in accord.

From all of this we conclude that a dental hygienist program may be abolished at the option of the school district. It matters not if the reason for the abolishment is financial or a decrease in enrollment or a combination of the two since there is no language in the Code that sets forth the reason that the program may be abolished: Charleroi Schools v. Secretary of Education, supra.

II. WHEN A PROGRAM IS ABOLISHED, MAY THE PROFESSIONAL EMPLOYE BE SUSPENDED IF SHE IS NOT QUALIFIED IN SOME OTHER CAPACITY?

The purpose of tenure under the School Code is to remove politics, personal favoritism and other forms of bias and prejudice from the professional employes of the public schools. That concept is commendable provided its application does not become so technical that it becomes absurd.

The difficult issue that this court must squarely decide is whether section 11-1124 prevents the

suspension of a professional employe whose non-mandated position has been terminated or abolished. Must a school district maintain and pay a professional employe whose position has been abolished, or may the district suspend (rather than terminate) such employe with the responsibility to rehire such employe if the program is resumed, assuming the employe is not qualified for some other position in the school district?

The School Code, 24 P.S. §11-1124 provides as causes for suspension:

"Any board of school directors may suspend the necessary number of professional employes, for any of the causes hereinafter enumerated:

"(2) Curtailment . . . of the educational program on recommendation of the superintendent, concurred in by the board of school directors, approved by the Department of Public Instruction . . . to conform with standards of organization or educational activities required by law or recommended by the Department of Public Instruction."

We believe that this section of 1124 supports the action of the Grove City Area School Directors.

It was the recommendation of the superintendent, Dr. Wolfe, that the program of dental hygienist be suspended. This was concurred in by the board of school directors (see minutes of 6/14/76) and approved by the Department of Public Instruction which recommended that the school district comply with the mandated section 14-1403(a). (No. 6.) Therefore the conditions precedent prescribed for a curtailment of the education program were met.

The remaining question is whether this curtailment was done in such a manner as "to conform with standards of organization or educational ac-

tivities required by law or recommended by the Department of Public Instruction."

This section is somewhat difficult to interpret since the word "curtailment" means to "shorten" or "cut off any part" or to "reduce in size." If the law establishes any mandated standards of organization or educational activities, and, if the school district's organization or activities *exceed* those mandated standards, then it is obvious that the school district should have the right to reduce the non-mandated standards to the mandated standards required by law. Such a curtailment of the program, of necessity, requires the suspension of professional employes.

This we believe is the meaning of section 11-1124 which reads (with the surplus words deleted) as follows:

"Curtailment . . . to conform with standards of organization or educational activities *required* by law . . ." (Emphasis supplied).

Since the dental program as set forth in 24 P.S. §14-1403(a) is sufficient compliance with the mandated law, and since the school directors have complied with that section, we believe that the curtailment of their program from section 1403(b) to 1403(a) authorized the suspension of Mrs. Newlin.

In summary, we hold that 24 P.S. §11-1124, permits the suspension of a professional employe, if the school district in the curtailment of its educational program[3] abolishes a non-mandated program in such a manner as to conform with standards of organization or educational activities re-

---

3. We believe a dental hygienist program is a part of the educational program since the dental hygienist is a professional employe: 24 P.S. §11-1101.

quired by law or recommended by the Department of Public Instruction.

Since Mrs. Newlin may be suspended we note that she is not qualified for any position other than a dental hygienist. We, therefore, believe that she may be suspended and we affirm the decision of the board of school directors suspending Jean Newlin.

And now, December 23, 1976, the decision of the board of school directors of the Grove City Area School District is affirmed in regard to the suspension of Jean Newlin.